# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JAMES DONALDSON                                          CIVIL ACTION

VERSUS                                                        NO. 14-1896

DARREL VANNOY                                        SECTION: "E"(3)

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, James Donaldson, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On May 27, 2010, he was convicted of possession with intent to distribute cocaine.[1] On December 13, 2010, he was found to be a third offender and was sentenced as such to a term life imprisonment without benefit of probation, parole, or suspension of sentence.[2] On September 14, 2011, the Louisiana First Circuit Court of Appeal affirmed his

---

[1] State Rec., Vol. 3 of 6, trial transcript, p. 690; State Rec., Vol. 1 of 6, minute entry dated May 27, 2010; State Rec., Vol. 1 of 6, jury verdict form.
[2] State Rec., Vol. 3 of 6, transcript of December 13, 2010; State Rec. Vol. 1 of 6, minute entry dated December 13, 2010; State Rec., Vol. 1 of 6, Reasons for Judgment.

conviction, habitual offender adjudication, and sentence.[3]  The Louisiana Supreme Court then

denied his related writ application on March 9, 2012.[4]

After unsuccessfully seeking post-conviction relief in the state courts, petitioner filed the

instant federal application for habeas corpus relief.[5]  The undersigned thereafter issued a report

recommending that petitioner's federal application be found timely but that it nevertheless be

dismissed without prejudice as a mixed petition containing both exhausted and unexhausted

claims.[6]  On February 22, 2017, the United States District Judge adopted that Report and

Recommendation, stating:

> **IT IS ORDERED** that the petition of James Donaldson for issuance of a
> writ of habeas corpus under 28 U.S.C. § 2254, will be **DISMISSED WITHOUT
> PREJUDICE** for failure to exhaust state court remedies, unless Donaldson chooses
> to amend the petition to dismiss the unexhausted claims for relief and proceed with
> only the exhausted claims.  Donaldson is granted leave of court to file an amended
> petition for issuance of a writ of habeas corpus through and including **March 22,
> 2017**.  If an amended petition is not filed by March 22, Donaldson's petition will
> be dismissed without prejudice.[7]

On March 16, 2017, petitioner then filed an amended federal application asserting only

four claims.[8]  Because the state has conceded, and this Court has found, that those four claims

were exhausted on direct appeal, they will now be considered on the merits.

### I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively

overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections

---

[3] <u>State v. Donaldson</u>, No. 2011 KA 0326 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 4 of 6.
[4] <u>State v. Donaldson</u>, 84 So.3d 550 (La. 2012); State Rec., Vol. 4 of 6.
[5] Rec. Doc. 5.
[6] <u>Donaldson v. Cain</u>, Civ. Action No. 14-1896, 2016 WL 8309673 (E.D. La. June 24, 2016); Rec. Doc. 18.
[7] <u>Donaldson v. Vannoy</u>, Civ. Action No. 14-1896, 2017 WL 699755 (E.D. La. February 22, 2017); Rec. Doc. 20.
[8] Rec. Doc. 21.

2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court
> applies a rule that contradicts the governing law set forth in the [United States]

Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect

application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## II. Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case as follows:

On October 29, 2009, based on information from a confidential informant, surveillance observations, and controlled buys, the Narcotics Division of the St. Tammany Parish Sheriff's Office obtained and executed a search warrant for the defendant's residence. The officers recovered approximately three ounces of cocaine in separate bags. The officers also recovered a digital scale and a box of sandwich bags that also contained a bag of cocaine. The defendant was placed under arrest and transported to the St. Tammany Parish Jail.[9]

## III. Petitioner's Claims[10]

### A. Erroneous Grant of an Unwarranted Challenge for Cause

Petitioner first claims that the trial court erred in erroneously granting a state challenge for cause, thereby effectively providing the prosecution with an extra peremptory challenge. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues that prospective juror Shawn Liggio was erroneously removed for cause, and the State was thereby given more than twelve preemptory challenges. Though noting that during voir dire Liggio candidly suggested that his distrust of police officers based on life experience may cause him to more closely scrutinize their testimony, the defendant contends that Liggio rehabilitated himself. Thus, the defendant argues that there was no basis for the State's challenge for cause.
>
> The State or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his partiality, or on the ground that the juror will not accept the law as given to him by the court. LSA-C.Cr.P. art. 797(2) and 797(4). A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge's refusal to exclude him on grounds of impartiality is not an abuse of discretion, if after further questioning, the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. See State v. Lee, 559 So.2d 1310, 1318 (La. 1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). Nonetheless, a challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the prospective juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law reasonably may be inferred. State v. Thompson, 489 So.2d 1364, 1370 (La. App. 1 Cir.), writ denied, 494 So.2d 324 (La. 1986). A defendant cannot complain of an erroneous grant of a challenge to the State unless

---

[9] State v. Donaldson, No. 2011 KA 0326, at pp. 2-3 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 4 of 6.
[10] For ease of analysis, petitioner's claims are discussed herein in a different order than listed in the amended petition; however, all four claims are addressed.

the effect of such a ruling is the exercise by the State of more peremptory challenges than it is entitled to by law. LSA-C.Cr.P. art. 800(B). A trial court is vested with broad discretion in ruling on challenges for cause and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Howard, 98-0064 (La. 4/23/99) 751 So.2d 783, 795, cert. denied, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999).

After the trial court asked the second panel of prospective jurors if they had ever been the victims of a crime, the prospective juror in question, Shawn Liggio, stated that his vehicle was stolen in the past and he was once "involved in a hit-and-run by a drunk State trooper." When the trial court asked if those experiences would affect his ability to be a fair and impartial juror in this case, Liggio responded, "I have slight trust issues." Continuing the examination, the trial court asked Liggio if he could evaluate the testimony of a law enforcement officer the same as any other witness without being influenced by his experience. In response, Liggio stated, "I couldn't honestly give an opinion on that. I really couldn't."

The following further colloquy then took place:

THE COURT:
    You saying you don't know how –

MR. LIGGIO:
    I don't know how.

THE COURT:
    – how it would affect you?

MR. LIGGIO:
    Right, I've never been in this position before.

THE COURT:
    You think it could make it more difficult for you to be fair and impartial?

MR. LIGGIO:
    It could be slightly difficult.

THE COURT:
    Thank you, sir.

The trial court later asked Liggio if the fact that he has family members who have been employed in law enforcement would affect his ability to serve as a fair and impartial juror. Liggio simply responded, "No, sir."

During the State's examination of the prospective jurors on the second panel, the prosecutor stated, "Mr. Liggio, I think, yes, sir, you had some problems

with a drunken State trooper in New Orleans, right?"  Liggio confirmed that he had such a problem.  The trial court noted that police officers would be involved in the case and again examined Liggio as follows, "could you judge the credibility of a police officer the way you would a lay witness … would you automatically say, no, my experience is so bad that I'm just not going to listen to them?"  Liggio responded, "Depends on the evidence."

The following colloquy then took place between the prosecutor and Liggio:

MR. NORIEA:
No, no, no.  I understand that.  But they are the evidence.

MR. LIGGIO:
Right.

MR. NORIEA:
They are the evidence.  They are the evidence.  But, your guilty verdict depends on whether or not you give them a fair chance to – you determine their credibility.

MR. LIGGIO:
I'll give them a fair chance.

MR. NORIEA:
And would you tend to judge that police officer more harshly than a lay witness because they are a police officer?

MR. LIGGIO:
No.

MR. NORIEA:
You would give them a fair shot?

MR. LIGGIO:
Yes.

When the defense attorney asked the prospective jurors to rate the St. Tammany Parish Sheriff's Office on a scale of one to ten with ten being the best score, Mr. Liggio responded, "I couldn't rate it because I've never had any problem with them."

When asked about an on-the-job injury that he sustained in the past, Liggio stated that he had occasional headaches for the past six years for which he no longer took medication because of a past addiction, and had problems sitting or standing for long periods of time.  The trial judge noted that Liggio would be permitted to stand when so desired.

At the close of the jury selection from the pertinent panel, the State moved to remove Leggio for cause. In granting the State's motion, the trial court stated:

> Close call. I'm going to grant the challenge for cause. … And again, I base that on the fact that he testified I think had had a person [sic] involvement, personal experience with law enforcement, and indicated when I questioned him that he would be more difficult with law enforcement, meaning to me that he would have a predisposition against law enforcement is the way I interpreted it.

The State exhausted its twelve peremptory challenges. See LSA-C.Cr.P. art. 799. When determining whether or not a juror should be dismissed for cause, the trial judge should consider the potential juror's answers as a whole and not merely consider "correct" answers in isolation. Lee, 559 So.2d at 1318. In disclosing his prior experience with law enforcement officers, Liggio revealed his clear bias against them. During questioning by the trial court and the prosecutor, Liggio repeatedly expressed concerns about his ability to be fair and impartial, suggesting that he may be biased against police testimony. Conversely, he did not hesitate to say in an unqualified manner that he would not be biased in their favor. The trial judge had the benefit of questioning Liggio and examining his demeanor and intonations before making his ruling. After a thorough review of the voir dire, we find Liggio's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law could reasonably be inferred. Based on the record before us, we cannot say that the trial court abused its discretion in granting the State's challenge for cause. The counseled assignment of error lacks merit.[11]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[12]

To the extent that petitioner is now attempting to argue that the state courts misapplied the state law on this issue, that claim simply is not cognizable in this federal court. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Trevino v. Johnson, 168 F.3d 173, 184 (5th Cir. 1999) (quotation marks omitted); accord

---

[11] State v. Donaldson, No. 2011 KA 0326, at pp. 3-6 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 4 of 6.
[12] State v. Donaldson, 84 So.3d 550 (La. 2012); State Rec., Vol. 4 of 6.

Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)). Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1983).

Moreover, to the extent that petitioner is arguing that his rights under *federal* law were violated by the removal of Liggio, his claim clearly fails. Without more, the erroneous exclusion of an impartial juror generally does not violate a defendant's federal constitutional rights, even if the effect of the error is tantamount to granting the prosecution an extra peremptory challenge. Rather, the focus is not on the juror excused but instead on the jury ultimately empaneled. So long as the jury that actually sat in the case was impartial, a trial court's exclusion of a potential juror – even if erroneous – simply does not constitute reversible constitutional error. Jones v. Dretke, 375 F.3d 352, 355-57 (5th Cir. 2004).[13] Here, petitioner has not argued, much less shown, that the jury that ultimately sat in his case was not impartial. Accordingly, he has failed to prove a federal constitutional violation with respect to this claim.

**B. Sufficiency of the Evidence**

Petitioner also claims that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues that the evidence presented by the State failed to exclude
> all reasonable hypotheses of innocence, contending that he was only one of three

---

[13] A limited exception to this general rule exists in capital cases where the potential juror was excused for cause based on his opposition to the death penalty even though his views would not have prevented or substantially impaired his ability to perform as a juror. Gray v. Mississippi, 481 U.S. 648 (1987). However, this Circuit does not apply that exception outside of capital cases involving such challenges. Jones, 375 F.3d at 356. This is not such a case.

tenants who occupied the residence where the drugs were found. The defendant specifically argues that it was possible that another tenant owned the drugs, noting that he was outside when the police arrived to execute the search warrant and further contending that the drugs were found in a drawer used to store a female's items in a bathroom closet. The defendant also contends that the confidential informant was not familiar with the seller and provided an indistinct description of the seller.

In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988); State v. Wright, 98-0601 (La. App. 1 Cir. 2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, 00-0895 (La. 11/17/00), 773 So.2d 732. The elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. Louisiana Revised Statutes 15:438 is not a separate test from Jackson v. Virginia, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. All evidence, direct and circumstantial, must meet the Jackson v. Virginia reasonable doubt standard. State v. Wright, 445 So.2d 1198, 1201 (La. 1984). When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1 Cir.), writ denied, 514 So.2d 126 (La. 1987).

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor, 97-2261 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.

Louisiana Revised Statutes 40:967(A) provides, in pertinent part, that it shall be unlawful for any person knowingly and intentionally: (1) to produce, manufacture, distribute, or dispense or possess with the intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II. Cocaine and its derivatives are listed in Schedule II. LSA-R.S. 40:964, Schedule II(A)(4). A defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipients. See LSA-R.S. 40:961(14); State v. Cummings, 95-1377 (La. 2/28/96), 668 So.2d 1132, 1135.

A person not in physical possession of a drug is considered to be in constructive possession when the drug is under that person's dominion and control.

See State v. Trahan, 425 So.2d 1222, 1226 (La. 1983). Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) his knowledge that illegal drugs were in the area; (2) his relationship with the person, if any, found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; and (5) his physical proximity to the drugs. It is well settled that the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession. See State v. Toups, 01-1875 (La. 10/15/02), 833 So.2d 910, 913. A person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug. Determination of whether a defendant had constructive possession depends on the circumstances of each case. State v. Gordon, 93-1922 (La. App. 1 Cir. 11/10/94), 646 So.2d 995, 1002.

In cases where the intent to distribute a controlled dangerous substance is an issue, a court may look to various facts: (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of the drug found in the defendant's possession was inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute. State v. House, 325 So.2d 222, 225 (La. 1975).

Officer Saigeon initiated the investigation that led to the October 12, 21, 26, and 27 controlled purchases of cocaine at the defendant's residence. Officer Saigeon provided the confidential informant with funds from the St. Tammany Parish narcotics dispense fund and took custody of the purchased narcotics after the controlled purchases. According to Officer Saigeon, an undercover detective travelled with the confidential informant during the third purchase (on October 26) to allow his introduction to the third-party source, the defendant. On the date of the fourth controlled purchase, October 27, the undercover detective called the defendant, whom she had met the prior day during the third purchase, and requested to purchase cocaine. Officer Saigeon also participated in the execution of the search warrant obtained after the controlled purchases. Officer Saigeon confirmed that some of the articles of clothing located in the master bedroom appeared to belong to a female.

Detective Johnson participated in the October 29, 2009 search warrant execution at the defendant's residence. The defendant was present during the search, and a female who left the residence just prior to the search, later identified as Kimberly Burnett, was detained and brought back to the residence. One baggie of cocaine was found in the master bathroom vanity drawer. The digital scale, and a sandwich bag box containing another baggie of cocaine, and empty sandwich baggies were found in the bottom drawer of the vanity. A rolled-up towel located in the master bedroom closet contained three individual baggies of cocaine. Documentation addressed to the defendant was also located in the bathroom.

Detective Johnson also participated in police surveillance at the defendant's residence during controlled buys. On those occasions, officers observed brief transactions including hand-to-hand exchanges between the confidential informant, others, and a "heavyset black male" with a "dreadlock type hairdo," a physical appearance consistent with the defendant. During cross examination, Detective Johnson confirmed that items such as hair clips, a hair trimmer, and a hairbrush were located in the bathroom vanity drawer that contained cocaine, but was uncertain as to which hair items may have been used by the defendant.

Officer Steven Gaudet, a supervisor in the St. Tammany Parish Sheriff's Office Narcotics Division, also participated in the execution of the search warrant. Officer Gaudet testified that the defendant was at his mailbox when the police approached his residence. After the defendant was handcuffed and read his rights, he was escorted back into the residence. The defendant ultimately guided officers to the master bedroom and bathroom where the drugs were located, specifically instructing Officer Saigeon to look inside the sandwich bag box. Officer Gaudet also testified that the approximate street value of the narcotics was between twenty-five hundred to three thousand dollars. The officers recovered two hundred dollars in U.S. currency from a pair of men's jeans located on the bedroom floor. According to the serial numbers, some of the currency (specifically one hundred sixty dollars worth) was provided to the confidential informant from the St. Tammany Parish narcotics dispense fund to conduct the controlled purchases. Two different forms of cocaine were recovered, hydrochloride and base form, commonly referred to as "crack." According to the St. Tammany Parish Sheriff's Office crime lab, the total weight of the separately packaged seized cocaine was 72.06 grams.

Officer Saigeon testified that he did not have any indication that anyone else resided in the home with the defendant. Burnett provided documentation to show that she resided elsewhere. Charges were filed against Nicholas Darby, who allegedly distributed cocaine (that he retrieved from the defendant's residence) to an undercover police officer during one of the controlled purchases.

We find that the evidence was sufficient to prove that the defendant had dominion and control, even if shared, of the drugs located in the residence. The defendant pointed out the location of some of the drugs, thus he was well aware of their presence. The drugs were located in the defendant's residence, and the defendant was on the property at the time if his arrest; thus, he was within close physical proximity to the drugs and had full access to the area where the drugs were found. Not only was a significant amount of cocaine recovered in the case, but the cocaine was in a form usually associated with possession for distribution to others. Additionally, there was paraphernalia, including baggies and a digital scale consistent with use to measure an ounce of a substance, further evidencing the intent to distribute. Based on a thorough review of the evidence, in the light most favorable to the prosecution, we are convinced that any rational trier of fact could have concluded beyond a reasonable doubt that the evidence was sufficient to exclude every reasonable hypothesis of innocence and to support a conviction for

possession of cocaine with intent to distribute.  Thus, the third pro se assignment of error lacks merit.[14]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[15]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  He has not done so.

As the Louisiana First Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added); see also Cavazos v. Smith, 561 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state

---

[14] State v. Donaldson, No. 2011 KA 0326, at pp. 14-19 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 4 of 6.
[15] State v. Donaldson, 84 So.3d 550 (La. 2012); State Rec., Vol. 4 of 6.

court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Further, contrary to petitioner's argument herein, it must be noted that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded simply *does not apply in federal habeas corpus proceedings*; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Here, petitioner was convicted of possession with intent to distribute cocaine.  At trial, the state proved that the substance recovered was cocaine.  Further, the evidence was clearly sufficient to establish petitioner "possessed" that cocaine – it was recovered from his residence in a location he revealed to the searching officers.  Although he argues that two other individuals allegedly

shared the residence and therefore could have been the "true" possessors of the cocaine, that argument misses the mark. First, the fact that petitioner revealed the location of the cocaine to the officers showed that he had knowledge of and dominion and control over it. Second, the fact that one or both of the other residents could perhaps *also* have been considered to possess the cocaine is of no moment, because Louisiana law provides that more than one person can "possess" a quantity of drugs at the same time; exclusive possession is *not* required. See e.g., State v. Allen, 177 So.3d 771, 780 (La. App. 5th Cir. 2015) ("Possession of a controlled dangerous substance can be established by actual, constructive, or *joint possession* …." (emphasis added)); State v. Ceaser, 21 So.3d 1122, 1131 (La. App. 3rd Cir. 2009) ("[C]onstructive possession requires a showing that the substance was either within the defendant's control and dominion *or in the defendant's shared possession with another person*." (emphasis added)). Lastly, there was obviously evidence from which jurors could rationally conclude that petitioner intended to distribute the cocaine: (1) there was a significant amount of cocaine; (2) it was packaged in manner consistent with an intent to distribute; and (3) it was found with paraphernalia commonly used by drug dealers to weigh and package drugs for distribution. When all of this evidence is viewed *in the light most favorable to the prosecution*, it simply cannot be said that it was *irrational* for the jury to find that petitioner (either solely or jointly) possessed the cocaine with an intent to distribute it. See, e.g., Stokes v. Avoyelles Correctional Center, Civ. Action No. 05-202, 2006 WL 3760425, at *8 (E.D. La. Nov. 21, 2006) (evidence was sufficient to support conviction for possession with intent to distribute cocaine based on the amount of the drug (more than 60 grams) packaged in a form consistent with distribution and the presence of distribution paraphernalia (baggies and a scale)) (adopted by Engelhardt, J., on Dec. 18, 2006). Therefore, he cannot show that the state court's decision

rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

## C. Erroneous Admission of Evidence Concerning Other Crimes

Petitioner additionally claims that his rights were violated when the prosecution was allowed to present evidence of other crimes he had allegedly committed. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues that the trial court erred in allowing other crimes evidence to be admitted during the trial. The defendant notes that during opening statements, the prosecutor told the jury that in early October of 2009, narcotics detectives received information that the defendant was selling cocaine out of his residence. Noting the defendant was not on trial for distribution of cocaine and the State's failure to give notice of its intention to offer other crimes evidence, the defense objected and requested a mistrial. The defendant contends that the trial court was in error in ruling that the search warrant provided notice of the State's intention to offer other crimes evidence and noting that the defendant failed to request a hearing on its introduction. The defendant further notes the jury was also told that a confidential informant went to the defendant's home and purchased cocaine. The defendant contends that it is reasonable to conclude that prejudicial and highly inflammatory statements regarding other crimes evidence contributed to the verdict. The defendant contends that the State failed to comply with LSA-C.E. art. 404(B)(1). The defendant also notes that the State was allowed to offer as exhibits for the jury drugs that were bought on three separate occasions, though the defendant was not charged with or on trial for distribution of cocaine. The defendant argues that the evidence of the prior drug sales did not form *res gestae* and was not so similar as to establish a pattern or system and should not have been admitted.
>
> Louisiana Code of Criminal Procedure article 770(2) provides that a mistrial shall be granted, upon motion of the defendant, when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in an argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.[FN 3] The jurisprudence has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the State and would mandate a mistrial. State v. Madison, 345 So.2d

485, 494 (La. 1977). Mistrial is a drastic remedy that is only authorized where substantial prejudice will otherwise result to the accused. State v. Pooler, 96-1794 (La. App. 1 Cir. 5/9/97), 696 So.2d 22, 45, writ denied, 97-1470 (La. 11/14/97), 703 So.2d 1288. Further, a trial court ruling denying a motion for mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518 (La. 1/17/01), 776 So.2d 443, 454.

> [FN 3] It should be noted that even if a mistrial had been warranted under Article 770, it would not result in an automatic reversal of the defendant's conviction, but would be an error subject to harmless error review. See State v. Johnson, 99-1379 (La. 11/27/95), 664 So.2d 94, 100-02 (rejecting prior per se rule of reversing convictions based on error in introducing inadmissible other crimes evidence and holding that the introduction of inadmissible other crimes evidence results in a trial error subject to harmless error analysis).

Generally, evidence of crimes other than the offense being tried is inadmissible because of the substantial risk of grave prejudice to the defendant. State v. Millien, 02-1006 (La. App. 1 Cir. 2/14/03), 845 So.2d 506, 513. To avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lockett, 99-0917 (La. App. 1 Cir. 2/18/00), 754 So.2d 1128, 1130, writ denied, 00-1261 (La. 3/9/01), 786 So.2d 115.

Louisiana Code of Evidence article 404(B)(1) provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Evidence of other crimes, however, is not admissible simply to prove the bad character of the accused. Furthermore, the other crimes evidence must tend to prove a material fact genuinely at issue and the probative value of the extraneous crimes evidence must outweigh its prejudicial effect. State v. Tilley, 99-0569 (La. 7/6/00), 767 So.2d 6, 22, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).[FN 4] The issue of notice to the State's intent to use other crimes

evidence is separate and independent of the question of the admissibility of the evidence. Although a pretrial evidentiary hearing to determine the admissibility of such evidence is preferable, such a hearing is not always required. See State v. Addison, 551 So.2d 687, 692 (La. App. 1 Cir. 1989), writ denied, 573 So.2d 1116 (La. 1991).

> [FN 4] The procedure to be used when the State intends to offer evidence of other criminal offenses was formerly controlled by State v. Prieur, 277 So.2d 126 (La. 1973). However, 1994 La. Acts 3d Ex.Sess., No. 51 added LSA-C.E. art. 1104 and amended Article 404(b). The burden of proof in a pretrial hearing held in accordance with Prieur shall be identical to the burden of proof required by Federal Rules of Evidence Article IV, Rule 404. LSA-C.E. art. 1104. The burden of proof required by Federal Rules of Evidence Article IV, Rule 404, is satisfied upon a showing of sufficient evidence to support a finding by the jury that the defendant committed the other crime, wrong, or act. See Huddleston v. U.S., 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). The Louisiana Supreme Court has yet to address the issue of the burden of proof required for the admission of other crimes evidence in light of the repeal of LSA-C.E. art. 1103 and the addition of Article 1104. However, numerous Louisiana appellate courts, including this court, have held that the burden of proof is now less than "clear and convincing." See State v. Williams, 99-2576 (La. App. 1 Cir. 9/22/00), 769 So.2d 730, 734 n.4.

Under Article 404(B)(1) evidence of other crimes, wrongs or acts may be introduced when it relates to conduct, formerly referred to as *res gestae*, that "constitutes an integral part of the act or transaction that is the subject of the present proceeding." *Res gestae* events constituting other crimes are deemed admissible because they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. A close proximity in time and location is required between the charged offense and the other crimes. State v. Colomb, 98-2813 (La. 10/1/99), 747 So.2d 1074, 1076 (per curiam).

The *res gestae* doctrine in Louisiana is broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed during or after the commission of the crime if a continuous chain of events is evident under the circumstances. State v. Kimble, 407 So.2d 693, 698 (La. 1981). In addition, integral act (*res gestae*) evidence in Louisiana incorporates a rule of narrative completeness without which the State's case would lose its "narrative momentum and cohesiveness, 'with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict.'" Colomb, 747 So.2d at 1076

(quoting Old Chief v. United States, 519 U.S. 172, 187, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997)). The Louisiana Supreme Court has held that evidence of multiple crimes committed in a single course of conduct is admissible as *res gestae* at the trial of the accused for the commission of one or more, but not all, of the crimes committed in his course of conduct. State v. Washington, 407 So.2d 1138, 1145 (La. 1981); State v. Meads, 98-1388 (La. App. 1 Cir. 4/1/99), 734 So.2d 792, 797, writ denied, 99-1328 (La. 10/15/99), 748 So.2d 465.

 The evidence at issue in this assignment of error was first introduced during the motion to suppress hearing in May 12, 2010. The trial began on May 26, 2010. The initial trial reference occurred during the prosecution's opening statement. Specifically, the prosecution referred to information narcotic detectives received in October of 2009, indicating that the defendant was selling cocaine. The defense objected and moved for a mistrial, arguing that they did not receive notice and specifically relying on this court's opinion in State v. Scott, 908-2418 (La. App. 1 Cir. 6/19/09), 20 So.3d 1089. The trial court reviewed the opinion in Scott and noted that the State provided open file discovery containing the search warrant obtained based on the drug transactions at issue. The court concluded that the defendant therefore had reasonable notice of the State's intent to rely upon evidence of other crimes in connection with this case, and further noted that the defendant did not request a hearing. In finding that a mistrial was not warranted, the trial court noted the evidence in question was relevant as to the identity of the person in possession of the drugs seized in the instant case at the time of the execution of the search warrant and further noted that the contested evidence would be admissible if it related to conduct that constitutes an integral part of the act or transaction that was the subject of the present proceeding.

 At the outset, we note that we agree with the trial court's findings regarding the sufficiency of the notice of the other crimes evidence in this case. The issue of notice of the State's intent to use other crimes evidence is separate and independent of the question of the admissibility of the evidence. Although a pretrial evidentiary hearing to determine the admissibility of such evidence is preferable, such a hearing is not always required. State v. Addison, 551 So.2d at 692. Not every violation of Prieur notice requires reversal. Before a defendant can complain of such a violation, he must show prejudice. State v. Sanders, 93-0001 (La. 11/30/94), 648 So.2d 1272, 1284, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (La. 1996). Herein, the defendant had actual notice of the State's intent to rely on other crimes evidence considering the basis of the search warrant that lead to the recovery of the evidence in this case and the State's introduction of such other crimes evidence during the motion to suppress hearing on May 12, 2010, two weeks before the trial. The defendant makes no showing of any effect on his trial strategy. Because the defendant does not demonstrate prejudice based on lack of notice, he shows no basis for relief under the notice requirements of Prieur. See State v. Ridgley, 08-678 (La. App. 5 Cir. 1/13/09), 7 So.3d 689, 698, writ denied, 09-0374 (La. 11/6/09), 21 So.3d 301.

Regarding the admissibility of the other crimes evidence, we note that the circumstances of Scott are very similar to the instant case. In that case, the defendant was in pertinent part charged with possession with intent to distribute cocaine. Probable cause for a search warrant executed in that case was based on three drug sales prior to the execution of the search warrant, wherein the defendant allegedly sold crack cocaine to undercover officers. In that case we found the other crimes evidence of the three drug sales was inadmissible. Under the facts of that case, we specifically found that the other criminal acts did not form part of the *res gestae*. This court noted that the prosecutor therein failed to show the "other crimes" were related and intertwined with the charged offenses to such an extent the State could not have accurately presented its case without reference to them. This court further found that the other crimes evidence in that case had no independent relevancy besides simply showing a criminal disposition.

However, after the trial in the instant case, the Louisiana Supreme Court reversed this court's opinion in Scott, specifically holding the prior transactions were relevant to the question of whether the defendant, assuming further that he had actual or constructive possession of the contraband in the residence, intended to distribute the cocaine, an essential element of the offense charged. State v. Scott, 09-1658 (La. 10/22/10), 48 So.3d 1080, 1085 (per curiam). The denial of the motion for mistrial in the instant case must be reviewed in light of the Louisiana Supreme Court's reversal of this court's opinion in Scott and the factual and circumstantial similarities of that case and the instant case.

In order to convict the defendant in this case, the State was required to prove beyond a reasonable doubt not only that he possessed the cocaine found on his premises, but also that he did so with specific, subjective intention of possessing it in order to distribute it. See State v. Knighten, 07-1061 (La. 11/16/07), 968 So.2d 720, 721 (per curiam) (evidence of prior sales to informant admissible to prove an essential element of the crime charged, possession of marijuana with intent to distribute); State v. Grey, 408 So.2d 1239, 1241-42 (La. 1982). Moreover, evidence of the prior sales was also relevant because the defendant denied being in actual or constructive possession of the drugs found in the residence, arguing that others possibly lived in the residence and possessed the drugs.

Additionally, and in compliance with Prieur, the jury instructions provided that the other crimes evidence was received for the limited purpose of proving an issue for which other crimes evidence may be admitted, such as intent, and the defendant cannot be convicted of any charge other than the one named in the bill of information or one that is responsive to that charge. Even if we were to assume that the prior drug transactions forming the basis for the search warrant executed in this case did not form integral components of the charged offense, we find that the evidence was relevant to the extent that the probative value of the extraneous crimes evidence outweighed its prejudicial effect. Therefore, we find no abuse of

discretion in the trial court's denial of the defendant's motion for mistrial. The second pro se assignment of error lacks merit.[16]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[17]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts misapplied state evidence law, his claim simply is not reviewable in this federal proceeding. Pettus v. Cain, Civ. Action No. 14-1685, 2015 WL 1897711, at *7 (E.D. La. Apr. 27, 2015).

To the extent that petitioner is asserting a federal claim, he fares no better. Even if petitioner could show that the evidence was in fact improperly admitted, which is questionable for the reasons explained by the Louisiana First Circuit Court of Appeal, federal habeas relief still would not be warranted. The United States Fifth Circuit Court of Appeals has explained:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.").

Here, it cannot be said that the evidence in question played a crucial, critical, and highly significant role in petitioner's conviction. As already noted, there was substantial other evidence

---

[16] State v. Donaldson, No. 2011 KA 0326, at pp. 8-14 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 4 of 6.
[17] State v. Donaldson, 84 So.3d 550 (La. 2012); State Rec., Vol. 4 of 6.

which proved that the cocaine was intended for distribution, including: (1) there was a significant amount of drug; (2) it was packaged in manner consistent with an intent to distribute; and (3) it was found with paraphernalia commonly used by drug dealers to weigh and package drugs for distribution. Therefore, even without the evidence concerning the prior instances of distribution from the residence, there is every reason to believe that the jury would still have returned a verdict finding petitioner guilty of possession of cocaine with the intent to distribute.

For all of these reasons, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's deferential standard, this Court should likewise reject his claim.

## D.  Denial of Right of Confrontation

Lastly, petitioner claims that his rights under the Confrontation Clause were violated because the confidential informant did not testify at trial. On direct appeal, the Louisiana First Circuit Court of Appeal denied that claim, holding:

> [T]he defendant argues that he was denied his constitutional right to confront his accusers and his right to a fair trial because the confidential informant, to whom he allegedly sold drugs on several occasions, did not testify. The defendant contends that absent the confidential informant's testimony, the trial court erred in allowing Detective Bill Johnson of the St. Tammany Parish Sheriff's Office Narcotics Division to present testimony, which he contends included hearsay and lack corroboration, as to the confidential informant's statements and actions.[FN 2] The defendant notes that there was no testimony by the confidential informant or "unwitting" male or female as to who sold drugs to them on the 12th, 21st, and 26th of October, 2009. The defendant notes that he was unable to inquire as to any motive, bias, interest, or possible pending charges the confidential informant may have had in making the accusation against the defendant.
>
>> [FN 2]  The argument in support of this pro se assignment of error does not provide a name for the detective referenced. Based on the argument raised and record references, we have concluded that the

defendant is referring to Detective Johnson. While the defendant contends that Detective Johnson's testimony included hearsay, he is not challenging the admissibility of any portion of the detective's testimony on that ground on appeal. Moreover, although the defendant claims otherwise, Detective John's trial testimony regarding the use of a confidential informant was corroborated by Officer Scott Saigeon of the St. Tammany Parish Sheriff's Office Narcotics Division.

Louisiana Code of Evidence article 541(A) provides for an informant's privilege:

> The United States, a state, or subdivision thereof has a privilege to refuse to disclose, and to protect another from required disclosure of, the identity of a person who has furnished information in order to assist in an investigation of a possible violation of a criminal law.

Exceptions to this privilege are listed in Article 514(C). For example, disclosure can be ordered when a party clearly demonstrates exceptional circumstances where the informer's testimony is essential to the preparation of the defense or a fair determination on the issue of guilt or innocence. One situation where the informer's testimony may be essential is where the informer played a crucial role in the alleged criminal transaction. See Roviaro v. United States, 353 U.S. 53, 60-66, 77 S.Ct. 623, 628-30, 1 L.Ed.2d 639 (1957); State v. Davis, 411 So.2d 434, 436-37 (La. 1982). However, the burden rests with the accused to set forth concrete reasons why the identity of the informant is crucial to the defense. State v. Broadway, 96-2659 (La. 10/19/99), 753 So.2d 801, 815, cert. denied, 529 U.S. 1056, 120 S.Ct 1562, 146 L.Ed.2d 466 (2000).

In this case, the defendant was not charged with distribution of contraband, but with possession with the intent to distribute cocaine. The confidential informant did not play a crucial role in the transaction that led to the defendant's arrest because he played no part in the execution of the search warrant and subsequent search. See State v. Diliberto, 362 So.2d 566, 567-68 (La. 1978). Since the informant did not participate in a transaction for which the defendant was charged, the defendant's right to confrontation was not abridged. We note that even if the affidavit indicated the informant made a controlled buy to corroborate information in the search warrant, disclosure of the informant would not be required. See State v. Clark, 2005-61 (La. App. 5 Cir. 6/28/05), 909 So.2d 1007, 1015-16, writ denied, 05-2119 (La. 3/17/06), 925 So.2d 538. We find no merit to the argument raised in pro se assignment of error number one.[18]

---

[18] State v. Donaldson, No. 2011 KA 0326, at pp. 6-8 (La. App. 1st Cir. Sept. 14, 2011); State Rec., Vol. 4 of 6.

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[19]

It is beyond cavil that violations of the Confrontation Clause are subject to harmless error analysis. Hafdahl v. Johnson, 251 F.3d 528, 539 (5th Cir. 2001). Therefore, this Court need not definitively determine whether there was in fact a Confrontation Clause violation in this case, because even if such a violation occurred, it was obviously harmless. Although the confidential informant provided information of prior instances of drugs being distributed from petitioner's residence, that information was hardly critical. As already noted, there was substantial other evidence which proved that the cocaine was possessed with an intent to distribute it, including: (1) there was a significant amount of cocaine found in petitioner's residence; (2) the cocaine was packaged in manner consistent with an intent to distribute; and (3) it was found with paraphernalia commonly used by drug dealers to weigh and package drugs for distribution. In light of such evidence, any Confrontation Clause violation, even if one existed, was harmless. See, e.g., United States v. Parish, 606 F.3d 480, 488 (8th Cir. 2010) ("The rest of the evidence against Parish was overwhelming. He was found with drugs, a digital scale used to weigh drugs for distribution, and a loaded firearm, all in his vehicle and all under his control. Even if the admission of Officer Daly's testimony [that a confidential informant told him that a drug deal would occur] violated Parish's right of confrontation, a conclusion we do not make, the error was harmless beyond a reasonable doubt, and we are therefore not required to reverse Parish's conviction."); see United States v. Foreman, 588 F.3d 1159, 1163 (8th Cir. 2009) (concluding that erroneous admission of evidence in violation of Confrontation Clause was harmless beyond a reasonable doubt, noting

---

[19] State v. Donaldson, 84 So.3d 550 (La. 2012); State Rec., Vol. 4 of 6.

that the evidence, "while no doubt helpful to the Government's case, was not essential to it," and remaining evidence established guilt beyond a reasonable doubt). Accordingly, this claim does not warrant federal habeas corpus relief.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the amended federal application for habeas corpus relief filed by James Donaldson be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[20]

New Orleans, Louisiana, this twelfth day of April, 2017.

DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

---

[20] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.